# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **SHERYL JACKSON** and **JOY DRYER**, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **NATIONWIDE RETIREMENT SOLUTIONS, INC.,** <br><br> Defendant. | Case No. 2:22-CV-03499 <br><br> **Judge Michael H. Watson** <br><br> **Magistrate Judge Kimberly A. Jolson** |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Sheryl Jackson and Joy Dryer ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby move this Court for Preliminary Approval of a proposed class action settlement. In support thereof, Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; the Settlement Agreement ("Settlement Agreement") attached as **Exhibit 1**[1]; the Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement ("Coates Decl.") attached as **Exhibit 2**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Preliminary Approval to the Class Action Settlement is attached as **Exhibit 3**.

---

[1] Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

1

**MEMORANDUM IN SUPPORT**

Plaintiffs respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

**I.      INTRODUCTION**

This is a class action brought by Plaintiffs on behalf of themselves and a Class of all individuals whose personal information was allegedly compromised in the September 2022 data breach announced by Nationwide Retirement Solutions, Inc. (the "Data Incident"). Am. Comp., Doc.7, PageID 93, ¶ 19.  Plaintiffs and the proposed Class have reached a class action settlement with Defendant Nationwide Retirement Solutions, Inc. ("Nationwide" or "Defendant") where Defendant shall provide to all 2,189 Class Members enrollment in two years of three-bureau credit monitoring at no cost to the Class Members, and shall automatically extend enrollment for Class Members who already enrolled in the credit monitoring service previously offered by Defendant in response to the Data Incident. Additionally, Defendant has committed to continue a third-party ethical hacking cyber-security program, for one additional year as a cybersecurity enhancement measure for $225,000.00. In addition to these Settlement benefits and a part of the Settlement, Defendant has agreed to pay proposed Class Representatives reasonable Service Awards of $5,000 each ($10,000.00 total), and pay Class Counsel an amount not to exceed $120,000.00 in attorneys' fees, inclusive of any litigation expenses, and to cover the cost of notice to the proposed Class and the Class Action Fairness Act ("CAFA") Notice. *See* Settlement Agreement; *see also* Coates Decl., at ¶¶ 9, 13, 15.

The Settlement provides significant relief and lies well within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Rule 23(e). *See also* Coates Decl., ¶ 12. The Court should, therefore, preliminarily approve the

Settlement Agreement, direct that Notice be sent to all Class Members in the reasonable manner outlined below, preliminarily grant class certification for settlement purposes, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and petition for the class representatives' Service Awards, attorneys' fees, and expenses, and set a Final Approval Hearing date.

## II. BACKGROUND

### A. Procedural History

This is a class action brought by Plaintiffs on behalf of themselves and a Class of all individuals whose personal information was allegedly compromised in the Data Incident. Am. Comp., Doc. 7, PageID 93, ¶ 19. The Data Incident involved the potential access to Nationwide's customer's names, Social Security numbers, dates of birth, email addresses, phone numbers, and gender information (the "Private Information"). *Id.* at PageID 90, ¶ 2. Plaintiffs and Class Members include Defendant's current and former customers. *Id.* at PageID 92, 93 ¶¶ 17, 20, 22. In response to the Data Incident, Defendant sent letters to each impacted individual providing a description of the type of Private Information involved (the "Notice Letter"). *Id.* at PageID 93, ¶¶ 23, 24. Each Plaintiff received a Notice Letter from Defendant informing them about the Data Incident and that their Private Information was compromised. *Id*. at PageID 93-95, ¶¶ 19, 25, 26, 27.

In response, on September 27, 2022, Plaintiff Jackson filed the present case against Defendant for claims arising out of the Data Incident. On October 20, 2022, Plaintiff Joy Dryer filed a separate case in the Western Division of this Court, styled *Joy Dryer v. Nationwide Retirement Solutions, Inc.*, No. 1:22-cv-00612, which was subsequently transferred to the Eastern Division. After Defendant filed its consolidated motion to dismiss both actions, Plaintiff Dryer

voluntarily dismissed the separately-filed action, and Plaintiff Jackson filed an Amended Complaint in the present case adding Plaintiff Dryer as an additional named plaintiff on January 5, 2023.

In their Amended Complaint, Plaintiffs alleged individually and on behalf of the Class that, as a direct result of the Data Incident, Plaintiffs and Class Members have suffered numerous actual and imminent injuries, including: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention of, detection of, and recovery from the misuse of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time; (iv) the loss of time needed to take appropriate measures to mitigate the substantial risk of additional harm; (v) charges and fees associated with fraudulent charges on their accounts; (vi) loss of the use of funds or available credit following fraudulent charges; (vii) loss of privacy; (viii) loss of the benefit of their bargain, (ix) anxiety, inconvenience, annoyance, mental stress, mental anguish, and emotional distress; and (x) the present and substantial risk of imminent harm from further exposure of PII, which remains in Nationwide's possession and is subject to further unauthorized disclosures so long as Nationwide fails to undertake appropriate and adequate measures to protect the PII. Am. Comp, Doc. 7, PageID 90, ¶ 6.

Plaintiffs, individually and on behalf of other members of the Class asserted claims for Negligence (Count I), Intrusion Upon Seclusion (Count II), Breach of Implied Contract (Count III), and Unjust Enrichment (Count IV). Plaintiffs seek injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law. *Id.* at PageID 121–123.

### B. Negotiations and Settlement

This Settlement is the result of months of arm's-length negotiation and hard bargaining. On January 19, 2023, Defendant filed a motion to dismiss Plaintiffs' Amended Complaint. Doc. 10. Plaintiffs opposed the motion. Doc. 15.  Before Defendant's filing of a reply brief, the Parties jointly moved to stay all deadlines for sixty (60) days to allow for settlement negotiations. Doc. 18. The Court granted this motion on March 30, 2023. Doc. 19. Negotiations ensued between the Parties and mediation was scheduled with a court volunteer mediator. Coates Decl., ¶ 6.  However, the Parties were able to arrive at a settlement in principle before the intervention of the mediator. Before entering into this Settlement Agreement, the Parties discussed details about the Data Incident for settlement purposes. *Id*. ¶ 6-7.  Defendant disclosed information regarding the number of individuals impacted, Defendant's notice program and incident response, and Defendant disclosed that there were no indications that the underlying data that was involved in the Data Incident was exfiltrated from Defendant's network through an intrusion. *Id*. ¶ 7. Plaintiffs were able to properly evaluate the potential for damages on a class-wide basis. *Id*.  This Settlement will resolve all claims related to the Data Incident for the Class. *See* Settlement Agreement, ¶ 1.21.

### C. Summary of Settlement Terms

Under the proposed settlement, Defendant will pay for each Class Member to receive two years of three bureau credit monitoring, continue for one year a third-party ethical hacking cybersecurity program at a cost of $225,000, pay for direct Notice to the Class, pay Class Representative Service Awards totaling $10,000 ($5,000 each), and pay up to $120,000 in attorneys' fees to proposed Class Counsel inclusive of expenses. *Id*. ¶¶ 2.1, 2.2, 2.3, 7.2, 7.3.  The Settlement defines the Class as:

> **[T]he 2,189 persons whose personal information was potentially disclosed in the September 2022 Data Incident announced by Nationwide Retirement Solutions, Inc.**

Settlement Agreement, ¶ 1.3. The Class specifically excludes: (i) the Judge assigned to evaluate the fairness of this settlement; and (ii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

### 1. Settlement Benefits

The Settlement Fund will provide broad relief to the Class. First, the Settlement Fund will be used to pay for two years of three bureau credit monitoring made available to each Class Member without submitting any claim under the Settlement. Settlement Agreement, ¶ 2.1. Next, Nationwide has agreed to continue a third-party ethical hacking cybersecurity program for a year at a cost of $225,000 per year. Settlement Agreement, at ¶ 2.2

### 2. Scope of the Release

In exchange for consideration above, Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Incident at issue in this Litigation. Settlement Agreement, ¶ 6.1.

### 3. The Notice and Administration Plan

Under the Settlement Agreement, Defendant shall act as the Settlement Administrator and agrees to bear all notice and administrative costs associated with the Class, the cost of providing CAFA Notice to all appropriate entities, administering the Settlement Agreement, and administering the Settlement Benefits required under the Settlement Agreement. Settlement Agreement, ¶ 2.3. Defendant will provide Notice to any member of the Class via email to any email address in Defendant's possession and/or via mail to any postal address in Defendant's possession. Settlement Agreement, ¶ 3.2(a). The Notice program shall commence within forty-five (45) days after entry of the Preliminary Approval Order and shall be completed within sixty

(60) days after entry of the Preliminary Approval Order. Settlement Agreement, ¶ 3.4. Defendant, at Defendant's expense, will provide CAFA Notice within ten (10) days after the Motion for Preliminary Approval is filed with the Court. Settlement Agreement, ¶ 3.6.

Defendant shall email or mail notice in a form substantially similar to that in Exhibit A to the Settlement Agreement. The Notice will clearly and concisely inform Class Members of the Settlement Benefits, that Class Members will not have to submit a claim for the Settlement Benefits, and Class Members will receive credentials to enroll in three bureau credit monitoring or have their credit monitoring extended if they have previously enrolled in complimentary credit monitoring, after the Court grants Final Approval. *Id*. Additionally, the Notice will inform Class Members that they may do nothing and be bound by the settlement, that they may object to the Settlement, or they may submit a request to be excluded and not be bound by the settlement. *Id*.

### 4. Attorneys' Fees and Service Awards

Plaintiffs will also separately seek an award of attorneys' fees not to exceed $120,000.00, inclusive of expenses. Settlement Agreement, ¶ 7.2. The motion will be filed at least fourteen (14) days before Objection/Opt-Out Deadline. The Settlement Agreement further provides, subject to Court approval, for a payment of $5,000 to each Plaintiff as Service Awards for their services in representing the Class. *Id.* ¶ 7.3.

### III. LEGAL STANDARD

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Fed. R. Civ. P. 23(e) provides three steps for approving a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed

settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015). Plaintiffs request that the Court preliminarily approve the proposed Settlement.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)).[2] The Court should preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[3]

---

[2] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 1:04-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).
[3] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable.").

## IV. ARGUMENT

### A. The Proposed Settlement Satisfies the Standard for Preliminary Approval

#### 1. The Proposed Settlement Is the Product of Arm's-Length Negotiations between Experienced Professionals

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").

In this case, the settlement was the result of intensive, arm's-length negotiations between attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. Settlement negotiations in this case took place over the course of several months between counsel experienced with handling class action cases. Coates Decl., ¶ 6. No collusion or illegality existed during the settlement process. *Id*. Class Counsel, without any opposition from Nationwide, support the Settlement as fair and reasonable, and all certify that it was reached at arm's-length. *Id*. ¶¶ 6-7, 11-12.

#### 2. The Proposed Settlement Falls within the Range of Reasonableness and Warrants Issuance of Notice and a Final Approval Hearing

Although Plaintiffs believe that the claims asserted in the Litigation are meritorious and the Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos*, 2015 WL

9

4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted).[4] Furthermore, the Settlement was reached in this case to provide two years of credit monitoring automatically sent to all Class Members without requiring a claim for such benefit despite the Defendant producing information indicating that Private Information was not actually exfiltrated from Nationwide's systems. Coates Decl., ¶ 8, 12.

### 3. The Proposed Settlement Has No Obvious Deficiencies

There are no grounds to doubt the fairness of the proposed settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). Plaintiffs, like all other Class Members, will receive their settlement benefit of two years of enhanced credit monitoring without having to submit a claim for such settlement relief and without any bona fide evidence that Class Members' Private Information was actually exfiltrated through an intrusion during the Data Incident.

The matter of attorneys' fees and payment of expenses, as well as any Service Awards for Plaintiffs, will be determined by the Court. Proposed Class Counsel has agreed to limit their attorneys' fee request to $120,000.00, which is well within the range of fees awarded within the Sixth Circuit whether determined under the percentage of the benefit or under the lodestar method.

---

[4] Courts within this District have experienced the protracted litigation often required to simply get past the pleading stage in similar actions. *See, e.g.*, *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *13 (W.D. Ky. Dec. 1, 2017) (granting in part and denying in part motion to dismiss complaint in data breach action involving employee PII); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186-CHB, 2020 WL 265206, at *7 (W.D. Ky. Jan. 17, 2020) (dismissing all additional claims brought by the plaintiffs in amended complaint); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-CHB, 2021 WL 3076786, at *1 (W.D. Ky. July 1, 2021) (granting leave to file second amended complaint over defendant's objection).

Under a percentage of the benefit analysis, the value of the three-bureau credit monitoring is $9.95 per month (roughly $120 per year; $240 for two years). Coates Decl., ¶ 15. Given that there are 2,189 Class Members and the value of the credit monitoring for two years of $240, the credit monitoring to the Class is $525,360.00. *Id*. Adding in the $225,000 for the one year of a third-party ethical hacking cybersecurity program, the value of the benefit made available to the Class is $750,360.00. *Id*. Class Counsel's fee and expense request of $120,000.00 is approximately 16% when measured as a percentage of the benefit to the Class. *Id*. ¶ 16. A fee request inclusive of expenses of 16% ($120,000.00) is well below the range typically approved within the Sixth Circuit. *See In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (in the Sixth Circuit, attorneys' fees "typically … range from 20% - 50%"); *In re Automotive Parts Antitrust Litigation*, No. 12-md-02311, 2022 WL 4385345, at *2 (E.D. Mich. Sept. 22, 2022) (a fee request of 1/3 of the class action settlement fund "is within the range of fee awards made by courts in this Circuit"); *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio June 27, 2022) (awarding attorneys' fees of 1/3 of the $4.25 million settlement fund); *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-726-KLL (S.D. Ohio Sept. 30, 2022) (Doc. No. 73, PageID 1579) (awarding attorneys' fees of 1/3 of the $3.65 million settlement fund); *see also* Coates Decl., ¶ 17.

Proposed Class Counsel's fee request is also justified when analyzed under a lodestar crosscheck. To date, Class Counsel has compiled original complaints, an amended complaint, opposed a motion to dismiss, and negotiated the terms of this Settlement over the last several months. *Id.* ¶ 17. To date, Class Counsel has spent over 125 hours pursuing this matter on behalf of Plaintiffs and the Class for a lodestar total of roughly $82,000.00 and expenses of $1,008.40.

11

*Id.* Class Counsel will continue to accrue significant future lodestar potentially navigating this matter through final approval and in overseeing settlement administration. *Id.*

Plaintiffs further seek reasonable Service Awards of $5,000.00 each for their active involvement in this litigation. Because Plaintiffs and Class Counsel will move for an award of attorneys' fees and the Plaintiffs' Service Awards at least fourteen (14) days before the objection and opt out deadlines, the Court will have the ability to consider these requests and the Class's response to them, if any, when evaluating whether to grant final approval of class action settlement.

For the foregoing reasons, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### B. Certification of the Class Is Appropriate

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Here, Plaintiffs seek certification of the Class under Rule 23(b)(3), which provides that certification is appropriate where "the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

#### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific

number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement"); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying a 23-person class). Here, the 2,189 Class Members satisfy the numerosity element.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* (Internal quotation marks and citation omitted).

Here, Plaintiffs' claims turn on whether Defendant's security environment was adequate to protect Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once.

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality

13

requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *Am. Med. Sys.*, 75 F.3d at 1082. Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the Class Members represented. Here, the claims all involve Defendant's handling of Class Members' Private Information, and Plaintiffs' and the Class's claims are based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the claims of the Class, and they are appropriate Class Representatives.

    **4.**    **Adequacy of Representation**

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: (1) the "representative must have common interests with unnamed members of the class," and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594. Plaintiffs have no conflicts with the Class and have participated actively in the case. Coates Decl., ¶ 10. Moreover, Class Counsel have significant experience in class and complex litigation, including more than seventy-five (75) data breach class actions in state and federal courts throughout the country. *Id.* ¶¶ 3.

### 5. Certification for Settlement Purposes under Rule 23(b)(3) is Appropriate

Class certification under Rule 23(b)(3) has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084). When assessing these components, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 (on a request for settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial").

The Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). Also, the court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the

likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017) (citing Fed. R. Civ. P. 23(b)(3)).

### a. *Common Questions of Law and Fact Predominate*

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation. Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

### b. *A Class Is the Superior Method of Adjudicating this Case*

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied. See Fed. R. Civ. P. 23(b)(3). The Settlement Agreement provides members of the Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. Moreover, the cost of litigating each Class Member's case on an individual basis would be substantial for each Class Member; the most reasonable and economically feasible method of litigating and resolving these hundreds of claims is through the class device. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)).

Adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly. In no case is the individual amount at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial").

### C. The Court Should Appoint the Proposed Class Representatives and Class Counsel

Plaintiffs Sheryl Jackson and Joy Dryer seek to be appointed as Class Representatives for the Class. As discussed above, Plaintiffs have cooperated with counsel, assisted in the preparation of the Complaints, reviewed and approved of the settlement demand, and approved the terms of the Settlement on behalf of the Class. Coates Decl., ¶¶ 9-10. Moreover, Plaintiffs are committed to continuing to vigorously prosecute this case, including overseeing the notice program, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because they are adequate representatives, the Court should appoint them as class representatives.

Also, the Court should designate Terence R. Coates and Justin C. Walker of Markovits, Stock & DeMarco, LLC and Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class

Counsel. Firm bios for each attorney and their respective firms are attached as Exhibits A and B to the Coates Decl.

### D. The Proposed Form and Manner of Notice Is Reasonable and Should Be Approved

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The Notice plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Settlement Notice will be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort from Nationwide's records, and through databases tracking nationwide addresses and address changes.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than $120,000.00 inclusive of expenses. The proposed Notice Plan complies with Rule 23 and due process because it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class, the claims asserted, and the benefits offered;

(3) the binding effect of a judgment if a Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that one may make an appearance through counsel; (5) information regarding the Class Representatives' request for Service Awards; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries about the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Thus, the Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of notice, which includes individual notice by mail or email to all those who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies due process and Rule 23. *Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004). Thus, the Notice plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E. The Court Should Provide a Schedule Leading up to the Fairness Hearing

Plaintiffs request that the Court set a schedule, leading up to a Fairness Hearing, that would include, *inter alia*, deadlines for notice to Class Members for Class Members to object to the settlement, to opt out of the settlement, and to make claims under the settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order. At the Fairness Hearing, the Court may hear all evidence and oral argument necessary to make its final evaluation of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. A proposed Order Granting Preliminary

Approval of Class Action Settlement is attached as **Exhibit 3** to the Motion for Preliminary Approval of Class Action Settlement.

    Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579) – Trial Attorney
Justin C. Walker (0080001)
Jonathan T. Deters (0093976)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DE MARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*
*jdeters@msdlegal.com*
*dgould@msdlegal.com*

Gerard Stranch, IV (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
*gstranch@stranchlaw.com*

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 29, 2023, I served a copy of the foregoing via electronic filing in the ECF system.

*/s/ Terence R. Coates*
Terence R. Coates