## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **SHERYL JACKSON** and **JOY DRYER,** on behalf of themselves and all others similarly situated, | Case No. 2:22-CV-03499 |
| Plaintiffs, | **Judge Michael H. Watson** |
| v. | **Magistrate Judge Kimberly A. Jolson** |
| **NATIONWIDE RETIREMENT SOLUTIONS, INC.,** | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND CLASS REPRESENTATIVE SERVICE AWARDS

Pursuant to the Settlement Agreement [Doc. 24-1][1] preliminarily approved by the Court on July 11, 2023 [Doc. 25], Plaintiffs Sheryl Jackson and Joy Dryer and Class Counsel respectfully move for an order awarding (1) $120,000.00 in attorneys' fees (16% of the value of the settlement benefits), inclusive of Class Counsel's litigation expenses; and (2) Service Awards of $5,000 for each Class Representative.[2] As demonstrated herein, the fee requested by Class Counsel is appropriate under the "percentage of the benefit" method, which is the preferred approach for determining a reasonable fee in a case such as this one. The requested fee percentage is approximately 16% of the benefit conferred to the Class, which is well within the range typically

---

[1]    All capitalized terms not defined herein have the same meaning as in the Settlement Agreement.

[2]    Plaintiffs will submit a proposed order along with their upcoming Motion for Final Approval of Class Action Settlement that will also address the relief sought in this Motion.

1

approved in the Sixth Circuit. Further, the requested fee is supported by the discretionary lodestar cross-check analysis.

## MEMORANDUM IN SUPPORT

### I.     BACKGROUND

The case arises from the compromise of personal identifying information ("PII" or "Private Information") as a result of a September 2022 data breach (the "Data Incident") announced by Defendant Nationwide Retirement Solutions, Inc. ("Nationwide" or "Defendant"). Plaintiffs initiated this nationwide consumer class action on behalf of themselves and a class of "all persons residing in the United States whose PII was compromised in the September 2022 data breach announced by Nationwide Retirement Solutions, Inc." Plaintiffs' Amended Class Action Complaint ("Compl.") [Doc. 7], ¶ 94. Plaintiffs and Class Members include current and former customers of Defendant and its acquired entities, their dependents, and other individuals affiliated with Defendant whose PII was compromised in the Data Incident. In response to the Data Incident, Defendant sent a Notice Letter ("Notice Letter") to each impacted individual providing a description of the type of PII involved, which may have potentially included: full names, Social Security numbers, dates of birth, email addresses, phone numbers, and gender information.

On September 27, 2022, Plaintiff Sheryl Jackson filed the first complaint against Defendant in this Court for claims arising from the Data Incident. Defendant filed a Motion to Dismiss [Doc. 5] Plaintiff Jackson's Complaint on December 15, 2022. On January 5, 2023, Plaintiffs Sheryl Jackson and Joy Dryer filed an Amended Class Action Complaint [Doc. 7] and Defendant filed its Motion to Dismiss the Amended Class Action Complaint [Doc. 10] shortly thereafter on January 19, 2023. In their Amended Complaint, Plaintiffs alleged individually and on behalf of the Class that, as a direct result of the Data Incident, Plaintiffs and Class Members suffered numerous

injuries and would likely suffer additional harm in the future. Plaintiffs' claims for alleged damages and remedies included the following categories of harms: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention of, detection of, and recovery from the misuse of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) the loss of time needed to take appropriate measures to mitigate the substantial risk of additional harm; (v) charges and fees associated with fraudulent charges on their accounts; (vi) loss of the use of funds or available credit following fraudulent charges; (vii) loss of privacy; (viii) loss of the benefit of their bargain, (ix) anxiety, inconvenience, annoyance, mental stress, mental anguish, and emotional distress; and (x) the present and substantial risk of imminent harm from further exposure of PII, which remains in Nationwide's possession and is subject to further unauthorized disclosures so long as Nationwide fails to undertake appropriate and adequate measures to protect the PII. *See* Amend. Compl. [Doc. 7],  ¶ 6. Plaintiffs, individually and on behalf of those similarly situated, asserted claims for (i) negligence, (ii) intrusion upon seclusion, (iii) breach of implied contract, and (iv) unjust enrichment. Plaintiffs also sought injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law.

The Settlement Agreement is the product of extensive arm's-length negotiations over the course of several months. Before entering into this Settlement Agreement, the parties scheduled a mediation with a court volunteer mediatory and engaged in informal discovery during which Defendant produced information the scope of the Data Incident, the number of impacted individuals, Defendant's notice program and incident response, and security enhancements Defendant implemented following the Data Incident. *See* Declaration of Terence R. Coates in

Support of Preliminary Approval of Class Action Settlement [Doc. 24-2] ("Coates Preliminary Approval Declaration") ¶¶ 6, 7.

Under the Settlement, Defendant will provide each of the 2,189 Class Members with two years of three-bureau credit monitoring without requiring them to submit any claim for benefits. Further, the Settlement will require Defendant to enroll in a one-year third-party ethical hacking cybersecurity program at a cost of $225,000. Defendant has also agreed to pay reasonable Service Awards of $5,000 to each of the Class Representatives, reasonable attorneys' fees not to exceed $120,000, inclusive of litigation expenses, and to cover the cost of notice to the proposed Class and the Class Action Fairness Act ("CAFA") notice.

## II. ATTORNEYS' FEES

### A. Class Counsel's Attorneys' Fee Request is Reasonable

Rule 23(h) of the Federal Rules of Civil Procedure expressly authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Through the Settlement Agreement, Nationwide has agreed to pay Class Counsel an award of attorneys' fees, inclusive of expenses, not to exceed $120,000.00. Settlement Agreement, ¶ 7.2. The Parties did not discuss the payment of attorneys' fees, costs, expenses, or Service Awards until after the substantive terms of the Settlement had been agreed upon. *Id*. ¶ 7.1. Instead, the Parties agreed that "Defendant's obligation to pay attorneys' fees and expenses shall be limited to the amount awarded by the Court and not to exceed One Hundred Twenty Thousand Dollars." *Id.* at ¶ 7.2.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). "District courts apply a two-part

analysis to assess the reasonableness of an attorney fee petition." *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14-cv-1071, 2018 WL 11357092, at *5 (S.D. Ohio Aug. 24, 2018). "First, the court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach." *Id.* "Second, the Court must consider six factors to assess the reasonableness of the fee." *Id.* (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). The Court should provide a concise and clear explanation of the reasoning for adopting a particular method and the factors considered to arrive at the fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Rawlings*, 9 F.3d at 516. Here, Class Counsel's request for attorneys' fees is appropriately assessed using the percentage of the benefit analysis.

**B.    The *Ramey* Factors Support Class Counsel's Fee Request**

The Sixth Circuit has adopted the following factors (often referred to as the *Ramey* factors) to consider when determining what constitutes a reasonable fee:

1)  the value of the benefit rendered to the plaintiff class (i.e. the results achieved);

2)  society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

3)  whether the services were undertaken on a contingent fee basis;

4)  the value of the services on an hourly basis [the lodestar cross-check];

5)  the complexity of the litigation; and,

6)  the professional skill and standing of counsel involved on both sides.[3]

Each factor supports Class Counsel's fee request here.

---

[3]    *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (citing *Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188, 1196 (6th Cir. 1974), *cert. denied*, 422 U.S. 1048 (1975)).

5

## 1. The Value of the Benefit Rendered to the Class

When applying a percentage-of-the-benefit analysis, the Court determines Class Counsel's fee request as a percentage of the total value of the Settlement benefits made available. Class Counsel's request, compared as a percentage of the benefit made available to the Class, is reasonable. Courts within the Sixth Circuit routinely approve fee awards of approximately 1/3 (33.33%). *See In re Cincinnati Gas & Elec. Co. Sec. Litigation*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) ("typically the percentages range from 20% - 50%"); *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, *29 (M.D. Tenn. Aug. 11, 1999) ("[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%."). This range continues to be typical within the Sixth Circuit. *See, e.g., Dillworth v. Case Farms Processing, Inc.*, No. 5:08- cv-1694, 2010 WL 776933, *7 (N.D. Ohio Mar. 8, 2010) (fee equal to 33% of settlement amount); *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, *19 (N.D. Ohio Sept. 1, 2011) (fee equal to 29% of the settlement amount); *Clevenger v. Dillards, Inc.*, No. C-1-02- 558, 2007 WL 764291, *1 (S.D. Ohio Mar. 9, 2007) (fee equal to 29% of settlement amount).

"The [Supreme] Court has held that class plaintiffs' 'right to share the harvest of the lawsuit …, *whether or not they exercise it,* is a benefit ….'" *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis in original) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980)). Here, the benefits to the Class are fairly valued at $750,360.00. Doc. 24-1, Coates Preliminary Approval Decl. ¶ 15. Nationwide has agreed to provide two years of three-bureau credit monitoring, valued at $240 per person, to each of the 2,189 Class Members, thereby providing a value to the Class of $525,360. The retail cost of credit monitoring is a standard way courts use to determine the value of this benefit in a data breach case. *See,* e.g., *In re TJX Companies Retail Sec. Breach Litig.,* 584 F. Supp. 2d 395, 409 (D. Mass. 2008) (holding that "the

Court is comfortable characterizing this litigation as creating $177,000,000 in potential benefits for the class and using this figure as a benchmark against which to measure the award of attorneys' fees."). This benefit, when added to Nationwide's commitment to continue for one year of a third-party ethical hacking cybersecurity program at a cost of $225,000, brings the value of the benefit to the Class up to $750,360. Coates Preliminary Approval Decl. ¶ 15. Class Counsel's fee request of $120,000 totals approximately 16% of this benefit conferred to the Class. *Id*.

Class Counsel's fee request of $120,000 is reasonable because it is a comparatively smaller percentage of the benefit conferred when scrutinized against other settlements within the Sixth Circuit. *Id*. ¶ 16. As articulated in the Coates Declaration in Support of Preliminary Approval of Class Action Settlement, the value of benefits obtained by Class Members, without the need to file a claim or prove any fraud or out-of-pocket expenses is substantial, including $225,000 for the ethical hacking program and $525,360 in credit monitoring ($240 for two years of three bureau credit monitoring applied against 2,189 Class Members). *Id*. ¶ 15. These values total $750,360 in benefits obtained by the Class. This value does not include the cost of settlement notice and administration. With $750,360 in settlement benefits being obtained by Class Members, and factoring in the typical 1/3 fee awarded in contingency cases, a 1/3 fee of that amount would be $250,210, or more than double what Class Counsel is requesting here.

The Settlement Agreement states that Class Counsel's expenses will be included in Class Counsel's award of reasonable attorneys' fees up to $120,000. Settlement Agreement, ¶ 7.2. Class Counsel has incurred $1,042.90 in costs and expenses. Declaration of Terence R. Coates in Support of Plaintiffs' Motion for Attorneys' Fees and Class Representative Service Awards ("Supplemental Coates Declaration"), ¶¶ 9-10 (attached as **Exhibit 1**). As set forth in the Supplemental Coates Declaration, each expense for which Class Counsel seeks reimbursement

was necessary and directly related to this litigation. *Id*. ¶ 9. Accordingly, the first *Ramey* factor supports Class Counsel's fee request.

### 2. The Requested Fee Provides Adequate Incentive to Undertake this Representation for the Benefit of Others

Awarding Class Counsel the requested attorneys' fee amount provides an incentive for qualified and experienced attorneys to undertake this type of speculative and risky litigation. Thus, "class counsel's expenditure of time and money benefitted small claimants who lack the resources to prosecute a case of this nature." *Hainey v. Parrott*, No. 1:02-CV-733, 2007 WL 3308027, at *3 (S.D. Ohio Nov. 6, 2007). Without counsel willing to take the risk of challenging companies like Nationwide, Plaintiffs would have been left with no recourse since the cost to pursue their individual claims far exceeded their damages. *Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*, No. 15-CV-2956, 2022 WL 4079559, at *6 (S.D. Ohio Sept. 6, 2022) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." (quoting *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012)); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) ("Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases."). This second factor also supports the requested attorneys' fee award.

### 3. Class Counsel Undertook this Representation on a Contingent Basis

The third *Ramey* factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 765 (S.D. Ohio 2007) (citing *Bowling*, 922 F. Supp. at 1282). Some courts consider the risk of non-recovery to be the most important factor in the fee determination. *Id*. (citing cases).

"[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *Whitlock v. FSL Mgmt., LLC*, No. 3:10cv-00562, 2015 WL 9413142, at * 9 (W.D. Ky. Dec. 22, 2015) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. 2001).

Class Counsel agreed to undertake this litigation on a contingent basis.[4] Class Counsel took risk in advancing all costs,[5] while receiving no compensation for the work they have performed since 2022. Moreover, had there been no recovery, Class Counsel would not have been paid a fee or reimbursement for their expenses. Therefore, this factor weighs in support of Class Counsel's fee request.

### 4. The Value of the Services Supports the Fee Requested

Although performing a cross-check on the percentage method using Class Counsel's lodestar is optional and solely within the Court's discretion, *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 500 (6th Cir. 2011), courts may perform a lodestar cross-check to ensure counsel does not receive a windfall. *Love v. Gannett Co. Inc.*, No. 3:19-cv-296, 2021 WL 4352800, at *6 (W.D. Ky. Sept. 24, 2021); *see also In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 764. The purpose of the exercise is "not to supplant the court's detailed inquiry into the attorney's skill and efficiency in recovering the settlement" using the percentage of the fund and *Ramey* factors, but instead merely to ensure that the fee award is still "roughly aligned with the amount of work the attorneys contributed." *Id.*

"The Court performs a lodestar cross-check by comparing the lodestar multiplier used in this case to lodestar multipliers used in similar cases." *Id.* at 767. "In contrast to employing the

---

[4]     *See* Supplemental Coates Declaration, ¶5.

[5]     *Id.*, ¶¶ 9-10.

lodestar method in full, when using a lodestar cross-check, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *Id.* (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005)). This is because "the lodestar cross-check is 'not a full-blown lodestar inquiry' and a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 n.16 (3d Cir. Pa. 2005) (quoting Report of the Third Circuit Task Force, Selection of Class Counsel, 208 F.R.D. 340, 423 (2002)).[6]

Class Counsel, consisting of Terence R. Coates and Justin C. Walker or Markovits, Stock & DeMarco, LLC, and Gerard Stranch, IV of Stranch, Jennings, & Garvey, PLLC, have worked efficiently and diligently to forge a strong recovery for the Class. To date, the firms and their co-counsel have collectively spent more than 186.9 hours for a lodestar total of $121,101.74 pursuing this case and in forging this Settlement. *Id.* Furthermore, Class Counsel have incurred $1,042.90 in case expenses pursuing this case on behalf of the Class. Supplemental Coates Declaration, ¶¶ 9-10. Class Counsel will continue to expend additional hours and resources continuing to pursue this matter through final approval including overseeing the distribution of Settlement benefits to Class Members and answering any further questions from Class Members about the Settlement and its benefits. *Id.* ¶ 9.

The fact the lodestar cross-check results in a negative multiplier strongly suggests that Plaintiffs' requested fees are reasonable. *See*, *e.g.*, *Walls v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-673-DJH, 2016 WL 6078297, at *6 (W.D. Ky. Oct. 14, 2016); *Kimber Baldwin Designs, LLC*

---

[6]     *Accord* The Manual For Complex Litigation (Fourth) § 14.122 (2004) ("the lodestar is at least useful as a cross-check . . . using affidavits and other information provided by the fee applicant"); *Milliron v. T-Mobile United States*, 423 F. App'x 131, 136 (3d Cir. N.J. 2011) ("the crosscheck is not the primary analysis in this type of case and does not entail 'mathematical precision []or bean-counting,'").

*v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *6 (S.D. Ohio Nov. 13, 2017);

*Rikos v. Procter & Gamble Co.*, No. 1:11-CV-226, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30,

2018).

In sum, Class Counsel's fee request is reasonable based on a percentage of the benefit

analysis, and on the discretionary lodestar cross-check.

### 5.    The Complexity of the Litigation Supports the Requested Fee

The fifth *Ramey* factor requires the Court to consider the complexity of the case.  Although

nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly

complex class action in an especially risky area. Historically, data breach cases have faced

substantial hurdles in making it past the pleading stage. *See*, *e.g.*, *In re Countrywide Fin. Corp.*

*Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *6 (W.D. Ky. Aug.

23, 2010) (approving a data breach settlement in part because "proceeding through the litigation

process in this case is unlikely to produce the plaintiffs' desired results"); *Hashemi v. Bosley, Inc.*,

No. CV 21-946 PSG (RAOX), 2022 WL 18278431, at *4 (C.D. Cal. Nov. 21, 2022) (noting the

challenges in litigating data breach cases meant that "Plaintiffs would have faced prolonged

litigation and significant obstacles as trial approached"); *Antman v. Uber Techs., Inc.*, No. 3:15-

cv-01175, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (holding that the risk that plaintiff's

identity could be stolen was insufficient to confer standing based on a data breach exposing

plaintiff's name and driver's license number); *In re Sony Gaming Networks & Customer Data Sec.*

*Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of personal information and

allegations of a heightened risk of identity theft, without more, calls standing into question);

*Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB), 2010 WL 2643307, at *1

(S.D.N.Y. June 25, 2010) (collecting cases and noting that "every court to [analyze data breach

cases] has ultimately dismissed under Rule 12(b)(6) . . . or under Rule 56 following the submission of a motion for summary judgment").

Success at class certification has also been limited in these cases.[7] Even if this Court were to certify a contested class, the inherent risks attendant to trying a data breach class action would only magnify the difficult legal questions at issue here. *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("class certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on"). Although Plaintiffs believe they would ultimately prevail in such a trial, a verdict for the defense would be entirely possible.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. Data breach cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable deal is available. Here, the litigation was fraught with numerous risks. While Class Counsel remain confident in Plaintiffs' claims, there is a recognized element of risk in any litigation, particularly complex and expensive data breach class litigation. *See In re Omnivision Tech*s., 559 F. Supp. 2d 1036, 1047 (C.D. Cal. 2008) ("The risk that further litigation might result in plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees").

---

[7]     *See Adkins v. Facebook, Inc*., 424 F. Supp. 3d 686, 691 (N.D. Cal. Nov. 26, 2019) (granting motion to certify injunctive-only class, but denying motion to certify damages and issues classes in data breach class action); *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("data breach cases have experienced minimal success in moving for class certification"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach action); *In re TJX Cos. Retail Sec. Breach Litig*., 246 F.R.D. 389 (D. Mass. 2007) (same).  *Cf In re Brinker Data Incident Litig*., No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021) ("The Court acknowledges it may be the first to certify a Rule 23(b)(3) class involving individual consumers complaining of a data breach involving payment cards….").

### 6. The Professional Skill of Counsel on both sides Supports the Requested Fee

The last *Ramey* factor addresses the professional skill of counsel. "Negotiated and agreed-upon attorneys fees as a part of a class action settlement are encouraged as an 'ideal' toward which the parties should strive." *Bailey v. AK Steel Corp.*, No. 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008).[8] This "ideal" was met in this case by sophisticated counsel for both Plaintiffs and Defendant. Class Counsel have substantial experience representing plaintiffs in class action cases and specifically with data privacy class actions such as this one. Coates Preliminary Approval Declaration, ¶ 3. Courts in this District have noted Class Counsel's extensive experience with handling class action cases. *Miranda v. Xavier University*, No. 1:20-cv-539, 2023 WL 6443122, at *2 (S.D. Ohio Oct. 3, 2023) (noting that Markovits, Stock & DeMarco, LLC is "extremely qualified counsel with extensive experience handling class actions."); *see also* Coates Preliminary Approval Declaration, ¶ 4. Nationwide has likewise been represented by Carpenter Lipps – a law firm with substantial experience handling complex litigation. The fact that the Parties were able to negotiate an agreed-upon amount of attorneys' fees inclusive of costs indicates that Class Counsel's $120,000 request is reasonable – if not "ideal."

### 7. The Fee Request is Supported by the Class Representatives

The utilization of the percentage of the benefit doctrine as a basis for the payment of attorneys' fees and expenses is employed in addition to, and independent of, the contingent fee contract between lawyer and client. Class Representatives, through their approval of the terms of the Settlement Agreement, support Class Counsel's fee request of $120,000 inclusive of expenses.

---

[8] Federal authority is an appropriate aid to assist in interpreting Ohio Civil Rule 23. *See Cullen v. State Farm Mut. Auto. Ins. Co.*, 2013-Ohio-4733, 137 Ohio St.3d 373, 378, N.E.2d 614, ¶ 14 (quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987)).

Based upon the foregoing, a fee of $120,000 inclusive of expenses is reasonable, and is below the range established by courts within the Sixth Circuit and this District.

## III. SERVICE AWARDS

The Settlement Agreement also provides that Class Counsel will apply to the Court for Service Awards in the amount of $5,000.00 to each Plaintiff. *See* Settlement Agreement, ¶ 7.3. "Courts typically authorize contribution (or 'incentive' awards) to class representatives for their often extensive involvement with a lawsuit." *Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018); *see also Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *1 (S.D. Ohio Oct. 23, 2008) (approving $10,000 incentive award to each class representative); *Miranda*, 2023 WL 6443122, at *8 (granting $5,000 class representative service award when the plaintiff "was involved in settlement negotiations, approved the settlement demand sent to Xavier and final settlement amount, and remained engaged throughout the litigation."). Through their inclusion in the Amended Complaint, the Plaintiffs indicated their desire and willingness to undertake the responsibilities and fiduciary duties on behalf of the class. This is a voluntary obligation that goes well beyond the pursuit of their individual claims. Plaintiffs remained in close contact with Class Counsel, prior to the case filing and throughout the litigation; they also reviewed the Complaint and other court filings, and approved the Settlement. *See* Supplemental Coates Declaration, ¶ 3. Without their willingness to undertake these obligations on behalf of the Class Members, the recovery in this case would not have occurred. *Id*.

Accordingly, a Service Award of $5,000 to each Plaintiff for their time and work on this case on behalf of all Class Members is appropriate.

14

## IV.    CONCLUSION

Based upon the foregoing, Class Counsel respectfully requests this Court approve the payment of $120,000 as fair and reasonable for attorneys' fees, inclusive of litigation expenses necessary and directly related to the case, and $5,000 for each Plaintiff as Service Awards.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates
Justin C. Walker
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
tcoates@msdlegal.com
jwalker@msdlegal.com

Gerard Stranch, IV (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
*gstranch@stranchlaw.com*

*Class Counsel*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2023 before 5:00pm, I served a copy of the foregoing via electronic filing in the ECF system.


<u>/s/ *Terence R. Coates*</u>
Terence R. Coates