**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **SHERYL JACKSON** and **JOY DRYER,** on behalf of themselves and all others similarly situated, | Case No. 2:22-CV-03499 |
| Plaintiffs, | **Judge Michael H. Watson** |
| v. | **Magistrate Judge Kimberly A. Jolson** |
| **NATIONWIDE RETIREMENT SOLUTIONS, INC.,** | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT**

Pursuant to Fed. R. Civ. P. 23(e), and this Court's Opinion and Order Granting Preliminary Approval (Doc. 25), Plaintiffs Sheryl Jackson and Joy Dryer ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, respectfully move this Court for final approval of the class action settlement with Defendant Nationwide Retirement Solutions, Inc. ("Defendant"). Plaintiffs met and conferred with Counsel for Defendant and determined that this Motion is unopposed.

In support thereof, Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; the Declaration of Terence R. Coates in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Coates Final Approval Decl.") attached as **Exhibit 1**; the Declaration of April R. Woodruff, Associate Vice President of operations for Defendant ("Woodruff Decl.") attached as **Exhibit 2**; Plaintiffs' Unopposed Motion for Preliminary Approval, previously granted; records, pleadings,

1

and papers filed in this action; and such other evidence or argument that may be presented to the Court at or before the January 17, 2024 Final Approval Hearing. For the Court's convenience, a Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3**.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### I.      INTRODUCTION

Plaintiffs, by and through the undersigned Class Counsel, on behalf of themselves and the Class, respectfully submit this Memorandum in support of their unopposed motion pursuant to Federal Rule of Civil Procedure 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement (Doc. 24-1) and for certification of the Class.

If approved, the Settlement will successfully resolve the claims of 2,189 individuals nationwide whose personal information was allegedly compromised in the Data Breach announced by Defendant in September 2022 (the "Data Incident"). The Settlement brings meaningful resolution and significant benefits to the Class without requiring further delay, risk, and expense. As discussed below, the Settlement provides for two years of three-bureau credit monitoring at no cost to each of the 2,189 Class Members and automatically extends enrollment for Class Members who already enrolled in the credit monitoring service previously offered by Defendant in response to the Data Incident. Defendant has also committed to continue a third-party ethical hacking cyber-security program, for one additional year as a cybersecurity enhancement measure for $225,000.00.

On July 11, 2023, the Court issued an Opinion and Order granting preliminary approval of the Settlement (*See* Doc. 25) (the "Preliminary Approval Order"). In doing so, the Court found that

the Settlement Agreement, the proposed Notice plan, forms of Notice, proposed Class Representatives, proposed Class Counsel, proposed Settlement Benefits, and proposed method of distributing the Settlement Benefits are all "fair, reasonable and adequate." *Id.* at ¶ 1 (PageID # 330, 331).

The Court-approved notice plan has now been executed and nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. As of December 28, 2023, of the 2,189 Class Members who were sent direct notice of the proposed settlement, ***none*** have filed an objection and none have requested to be excluded. Coates Final Approval Decl., ¶ 5; Joint Notice Regarding Settlement Opt-Outs and Objections (Doc. 28, PageID # 362); Due to the structure of the benefits offered under the Settlement Agreement, Class Members need not submit claims in order to fully avail themselves of the settlement benefits. Coates Final Approval Decl., ¶ 3. Because the Settlement is a quality result for the Class, particularly in view of the risks and delays involved in continued litigation, Plaintiffs respectfully request that the Court grant final approval of the Settlement, grant Plaintiffs' pending Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (Doc. 27), and enter a final order and judgment dismissing this case.

## II.     BACKGROUND

### a.     Procedural History

Plaintiffs brought this data privacy class action on behalf of themselves and a Class of all individuals whose personal information was allegedly compromised in the Data Incident announced by Defendant in September 2022. Plaintiff Sheryl Jackson filed this action against Defendant for claims arising out of the Data Incident where the names, Social Security numbers, dates of birth, email addresses, phone numbers, and gender information (collectively "Private Information") of Plaintiffs and Class Members were allegedly compromised. On October 20, 2022,

Plaintiff Joy Dryer filed a separate case in the Western Division of this Court, styled *Joy Dryer v. Nationwide Retirement Solutions, Inc.*, No. 1:22-cv-00612, which was subsequently transferred to the Eastern Division. After Defendant filed a consolidated motion to dismiss both actions (Doc. 5), Plaintiff Dryer voluntarily dismissed the separately-filed action, and Plaintiff Jackson filed an Amended Complaint in the present case adding Plaintiff Dryer as an additional named plaintiff on January 5, 2023 (Doc. 7, "Compl."). The Amended Complaint asserted claims for (i) negligence, (ii) intrusion upon seclusion, (iii) breach of implied contract, and (iv) unjust enrichment. Plaintiffs also sought injunctive relief, declaratory relief, monetary damages, and all other relief in equity or by law. Compl., PageID 112-23.

Defendant moved to dismiss the Amended Complaint in its entirety on January 19, 2023 (Doc. 10). Plaintiffs filed their memorandum in opposition to the motion to dismiss on March 2, 2023 (Doc. 15). Once the motion was fully briefed, the Parties jointly moved to stay the litigation pending settlement negotiations. The Court granted the Parties 90 days to confer and negotiate a settlement in principle (Docs. 19, 21). Negotiations ensued between the Parties and mediation was scheduled with a court volunteer mediator. Coates Final Approval Decl., ¶ 4. However, the Parties were able to arrive at a settlement in principle before the intervention of the mediator. *Id.* Before entering into this Settlement Agreement, the Parties discussed details about the Data Incident for settlement purposes. *See Id.*, ¶ 2. Defendant disclosed information regarding the number of individuals impacted, Defendant's notice program and incident response, and Defendant disclosed that there were no indications that the underlying data that was involved in the Data Incident was exfiltrated from Defendant's network through an intrusion. *Id.* ¶ 2. Plaintiffs were able to properly evaluate the potential for damages on a class-wide basis. *Id.* This Settlement will resolve all claims related to the Data Incident for the Class. *See* Settlement Agreement, ¶ 1.21.

4

On June 29, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 24). On July 11, 2023, the Court entered the Preliminary Approval Order preliminarily approving the Settlement and conditionally certifying the Class (Doc. 25).

**b.      Terms of the Settlement Agreement**

Under the proposed Settlement, Defendant will pay for each Class Members' enrollment in two years of three-bureau credit monitoring. Additionally, Defendant will continue for one year a third-party ethical hacking cyber-security program at a cost of $225,000.00. In addition to these Settlement benefits and as a part of the Settlement, Defendant has agreed to pay proposed Class Representatives reasonable Service Awards of $5,000 each ($10,000.00 total) and pay Class Counsel an amount not to exceed $120,000.00 in attorneys' fees, inclusive of any litigation expenses, and to cover the cost of notice to the proposed Class and the cost of the Class Action Fairness Act ("CAFA") Notice. Settlement Agreement, ¶¶ 2.1, 2.2, 2.3, 7.2, 7.3 (Doc. 24-1, PageID # 243-244, 249). The court preliminarily and conditionally approved, for settlement purposes, a Class consisting of:

> **All individuals whose Private Information was compromised in the September 2022 data breach announced by Nationwide Retirement Solutions, Inc.**

(Doc 25, PageID 331). The Class specifically excludes: (i) the Judge assigned to evaluate the fairness of this settlement; and (ii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. Settlement Agreement, ¶ 1.3, PageID 237. The Class is comprised of 2,189 individuals. *Id.*; Preliminary Approval Order, Doc. 25, PageID 332. Plaintiffs and Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims

arising from or related to the Data Incident at issue in this litigation. Settlement Agreement, ¶ 6.1, PageID 248-249.

### c. Preliminary Approval and the Fairness Process

On June 29, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 24). On July 11, 2023, the Court issued an Opinion and Order preliminarily approving the Settlement (Doc. 25). Consistent with the Preliminary Approval Order, on August 23, 2023, Defendant sent notices by email or regular U.S. mail to all 2,189 class members in the settlement class. Woodruff Decl., ¶ 2; Notice of Proposed Settlement of Class Action (Settlement Agreement, Ex. A, PageID 259-261). In the event of undeliverable mail and/or email, Defendant took reasonable measures to obtain updated information and resend the notice. Woodruff Decl., ¶ 3. After taking these measures, Defendant is aware of only five instances where notice could not be provided, and in four of those instances it appears that the individuals are deceased. *Id.*

On October 13, 2023, Class Counsel filed their Motion for Attorneys' Fees, Costs, and Expenses, and Class Representative Service Awards (Doc. 27, PageID 340-355). In doing so, Plaintiffs respectfully asked the Court to approve $120,000.00 in attorneys' fees inclusive of litigation expenses incurred to achieve this Settlement. *Id.* Plaintiffs further sought Court approval of Service Awards of $5,000.00 for each of the Class Representatives. *Id.*

## III. ARGUMENT

### A. Final Class Certification for Settlement Purposes is Appropriate

This Court preliminarily approved class certification for Settlement purposes in its July 11, 2023, Opinion and Order (Doc. 25). At this juncture, final approval is appropriate.

## 1.  **The Elements of Rule 23(a) Are Satisfied**

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Here, all four elements are satisfied.

### a.  *A Class of 2,189 Satisfies Numerosity*

Rule 23(a)(l) requires that plaintiff demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions. . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Here, there are roughly 2,189 Class Members, satisfying the numerosity requirement. Settlement Agreement ¶¶ I, IV. 1.3; Coates Final Approval Decl., ¶ 5.

### b.  *Commonality is Satisfied*

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

Here, Plaintiffs' claims turn on whether Defendant's security environment was adequate to protect Class Members' Private Information. (*See*, e.g., Doc. 7, Amended Class Action Complaint ¶¶ 30, 98(d), Page ID 95, 108). Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once. Commonality is satisfied.

### c.  *Typicality is Satisfied*

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id*. (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992)); *see also Am. Med. Sys*., 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented.

Here, the claims all involve Defendant's alleged failure to protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs' claims are typical of those of the claims of the Class, and they are appropriate Class Representatives. Typicality is satisfied.

### d.  *Plaintiffs and Class Counsel Adequately Represent the Class*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the

representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). Here, Class Representatives have no conflicts with the Class and have participated actively in the case. Coates Final Approval Decl., ¶¶ 6, 7. Furthermore, they were active participants in the Litigation and Settlement process. *Id.* at ¶ 6. Moreover, Class Counsel have significant experience in class and complex litigation, including more than 100 data breach class actions in state and federal courts throughout the country. Coates Final Approval Decl., ¶ 9. The adequacy requirement is satisfied.

## 2. <u>The Requirements of Rule 23(b)(3) are Met in the Settlement Context.</u>

Plaintiffs seek to certify a Class for settlement purposes under Rule 23(b)(3), which has two components: predominance and superiority. When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only, and a showing of manageability at trial is not required. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation. Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Class Member. As such, because the class-

wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Settlement would relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against Defendant. *See Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they employ the class-action device." (internal quotations omitted)).

Adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial.").

### B. The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances, and was Successful

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2). *See In re Auto. Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (citing Federal Judicial Center, Manual for Complex Litig. § 21.312 (4th ed. 2004)). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1223-23 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

Defendant has acted directly as the Settlement Administrator in this matter, saving the Class the considerable expense of third party settlement administration. Due to its position and the information already in its control, Defendant was able to serve direct notice on each of the 2,189 class members (with the exception of only five class members, four of whom are believed to be deceased), reaching over 99% of the Class. *See* Woodruff Decl. ¶¶ 2-3. Generally, a notice reaching 70-95% of the class is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010) (www.fjc.gov/sites/default/files/2012/NotCheck .pdf); *see*

*also Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022). The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). The notice program satisfies the structures of Rule 23 and due process and should be approved by the Court.

### C. The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc*., 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).  These factors include:

A.  Whether the class representatives and class counsel have adequately represented the class;

B.  Whether the proposal was negotiated at arm's length;

C.  Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D. Whether the proposal treats class members equitably.

These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at *Advisory Committee's Note to 2018 amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). All of the case law and 23(e) factors weigh in favor of granting final approval here.

### 1. The Settlement Resulted from Mediated, Arm's Length Negotiations without any Risk or Evidence of Fraud or Collusion

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 11.41 at 90 (4th Ed. 2002); *see also Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arm's length negotiations, warranting a presumption in favor of approval"). The Settlement here was the result of extensive and contentious arm's length negotiations between counsel with many decades of experience in handling complex, class action litigation. Coates Final Approval Decl., ¶ 3. Settlement negotiations in this case took place over the course of several months to finalize the Settlement Agreement. *Id.* No collusion existed during the settlement process. *Id.*

### 2. The Complexity, Expense, Likely Duration of the Litigation, and Substantial Risk for Plaintiffs Warrants Final Approval of the Settlement

The Sixth Circuit has identified the likelihood of success on the merits as the most important factor a district court must evaluate in assessing the fairness of a class action settlement.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)).[1] This case is no different in that it is a data privacy class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug.

---

[1] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

14

12, 2019) ("The realm of data breach litigation is complex and largely undeveloped. It would present the parties and the Court with novel questions of law.").

Class certification is another hurdle that would have to be met—and one that has been denied in certain other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). Further, if Plaintiffs are successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA Inc.*, No. 14-cv-6233, 2015 WL 5444651, *11 (S.D.N.Y. Sept. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing."). Plaintiffs would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and Class Members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval.

While Plaintiffs are confident in the strength of their claims, they are also pragmatic and aware of the various defenses available to Defendant, as well as the risks inherent to continued litigations. Defendant has consistently denied the allegations raised by Plaintiffs and made clear at the outset that it would vigorously defend the cases. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face the further risk of not receiving any relief at all.

The Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim. The Settlement delivers real value to Class Members. Under any analysis, the

relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

### 3. The Fact that Plaintiffs' and Defendant's Counsel and Plaintiffs Recommend Approval of the Settlement Strongly Indicates that the Settlement is Fair, Reasonable, and Adequate

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by a class representative who, like the Plaintiffs here, was intimately involved in the litigation and supports the Settlement. *Gascho v. Global Fitness Holdings*, *LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiffs support this Settlement because it provides Class Members with immediate and substantial benefits. As the result of informal discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

### 4. **The Class's Reaction Overwhelming Supports the Settlement**

The fact that no Class Members have objected to and/or opted out of the Settlement strongly supports final approval of the Settlement. Coates Final Approval Decl., ¶ 5; Joint Notice Regarding Settlement Opt-Outs and Objections (Doc. 28, PageID # 362); *see also BleachTech LLC v. United Parcel Service, Inc.*, No. 14-12719, 2022 WL 2835830, at *3 (E.D. Mich. July 20, 2022) (noting that no objections to the class action settlement "was a clear indication that the Settlement Class Members support the Settlement."); *Moore v. Medical Financial Services, Inc.*, No. 2:20-cv-02443, 2021 WL 6333304, at *4 (W.D. Tenn. Nov. 30, 2021) (granting final approval when "no objections were filed and only five members requested to be excluded.").

### 5. **This Settlement Serves the Public Interest**

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[2] This Settlement serves the public's interest by avoiding protracted litigation and freeing up judicial resources. *See In re Telectronics Inc.*, 137 F. Supp. 2d 985, 1025 (S.D. Ohio 2001); *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class

---

[2] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (noting that "[p]ublic policy generally favors settlement of class action lawsuits").

action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals").

Particularly in light of the immediate benefits that the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

### 6.  The Other Rule 23(e) Factors Support the Settlement

To the extent not addressed above, the remaining Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. Rule 23(e)(2)(C)(ii). The attorneys' fees of $120,000 are well within the range of reasonableness for fees in a case of this nature and will not be paid until the Effective Date. Rule 23(e)(2)(C)(iii); *see also* Declaration of Terence R. Coates in Support of Plaintiffs' Motion for Attorneys' Fees and Class Representative Service Awards (Doc. 27-1, PageID # 357-61) (discussing and justifying the fee amount in context of settlement value and governing precedent). There is no undisclosed agreement made in connection with the Settlement. Coates Final Approval Decl., ¶ 8; *see also* Rule 23(e)(2)(C)(iv). All Class Members are treated equitably relative to each other—they all have the opportunity to receive equal benefits. Rule 23(e)(2)(D). In total, all of the factors to be considered when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

## IV.    CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs Jackson and Dryer respectfully request that the Court grant final approval of class action settlement, including awarding Service Awards in the amount of $5,000 to each Class Representative, $120,000 in reasonable attorneys' fees inclusive of litigation expenses, and enter the proposed Order attached as **Exhibit 3**.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579) – Trial Attorney
Justin C. Walker (0080001)
Jonathan T. Deters (0093976)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DE MARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*
*jdeters@msdlegal.com*
*dgould@msdlegal.com*

Gerard Stranch, IV (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
*gstranch@stranchlaw.com*

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2024, I served a copy of the foregoing via electronic filing in the ECF system.

*/s/ Terence R. Coates*
Terence R. Coates