## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Sheryl Jackson, *on behalf of herself and all others similarly situated,*

      **Plaintiff,**

      **v.**

**Nationwide Retirement Solutions, Inc.,**

      **Defendant.**

**Case No. 2:22-cv-3499**

**Judge Michael H. Watson**

**Magistrate Judge Jolson**

## OPINION AND ORDER

Sheryl Jackson and Joy Dyer (the "Class Representatives"), on behalf of themselves and all others similarly situated (collectively, "Plaintiffs" or "Class Members"), move for final approval of the class action settlement, ECF No. 30, and for an award of attorney's fees and service awards, ECF No. 27. Nationwide Retirement Solutions, Inc., does not oppose either motion. For the reasons below, Plaintiffs' motions are **GRANTED**.

### I.      BACKGROUND

**A.    Procedural History**

Plaintiffs filed a Class Action Complaint against Defendant in September 2022, following a data breach incident, alleging that Defendant failed to adequately safeguard Plaintiffs' personal identifiable information ("PII"). Compl., ECF No. 1. Plaintiffs assert various state-law claims on an individual and class-

wide basis, including claims for negligence, intrusion upon seclusion, breach of implied contract, and unjust enrichment. Amend. Compl. ¶¶ 94–168, ECF No. 7.

The Parties briefed a motion to dismiss. ECF Nos. 10 & 15. The Court extended Defendant's time to reply. ECF No. 17. Before that deadline expired, the Parties moved for a stay pending settlement, ECF No. 18, which the Court granted, ECF No. 21. Plaintiff then moved for preliminary approval of their settlement agreement (the "Settlement Agreement"). Mot., ECF No. 24; Settlement Agr., ECF No. 24-1. The Court granted preliminary approval. Order, ECF No. 25. The Court held a fairness hearing on January 19, 2024, and now turns to Plaintiffs' unopposed motions for final approval of the Settlement and for an award of attorney's fees, costs, and service awards. ECF Nos. 27 & 30.

**B.    Settlement Agreement**

Under the Settlement Agreement, Defendant will pay for each Class Members' enrollment in two years of three bureau credit monitoring. Settlement Agr. 11–12, ECF No. 24-1. Defendant will also participate for one year in a third-party ethical hacking cyber-security program at a cost of $225,000.00. *Id.* at 12. In addition, as part of the Settlement Agreement, Defendant has agreed to pay the Class Representatives a service award of $5,000.00 each and pay Class Counsel attorneys' fees of up to $120,000.00, inclusive of any litigation expenses, the cost of notice to the proposed class, and the cost of the Class Action Fairness Act Notice. *Id.* at 17.

The Settlement Class is defined as follows:

[A]ll individuals whose PII was compromised in the September 2022 data breach announced by Nationwide Retirement Solutions, Inc.

*Id.* at 1. The Parties represent the Class consists of 2,189 members (the "Class Members"). *Id.* at 2.

## C. Notice

As represented by the Parties at the Fairness Hearing and consistent with the Court's order granting preliminary approval of the Settlement Agreement, Defendant sent notices by email or regular U.S. mail to all 2,189 Class Members. Woodruff Decl. 1, ECF No. 30-2. In the event of undeliverable mail or email, Defendant took reasonable measures to obtain updated information and resend the notice. *Id.* at 1–2. Notably, Defendant is aware of only five instances in which notice could not be provided, and in four of those instances the individual is believed to be deceased. *Id.*

## II. APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT

To grant final approval of a settlement class, the Rule 23 requirements must be satisfied. *See* Fed. R. Civ. P. 23. The Court has already preliminarily approved the Class for settlement purposes, ECF No. 25, and now finds that the standards required for final approval are satisfied.

## A. Numerosity

To satisfy numerosity, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict

numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Indeed, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc., v. EEOC*, 446 U.S. 318, 330 (1980). Here, the Class contains 2,189 Class Members. Numerosity is satisfied because it would be impractical, if not impossible, to join all Class Members into one action.

**B.    Commonality**

To establish commonality, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the Class Members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation marks and citations omitted). The claims "must depend upon a common contention[,]" and "[t]hat common contention . . . must be of such a nature that is capable of class wide resolution—which means that determination of its truth or its falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, the lawsuit raised several common questions including whether Defendant negligently safeguarded Plaintiffs' PII or intentionally failed to maintain adequate safeguards. In addition, the Class Members have the same alleged injuries:

(i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention of, detection of, and recovery from the misuse of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) the loss of time needed to take appropriate measures to mitigate the substantial risk of additional harm; (v) charges and fees associated with fraudulent charges on their accounts; (vi) loss of the use of funds or available credit following fraudulent charges; (vii) loss of privacy; (viii) loss of the benefit of their bargain, (ix) anxiety, inconvenience, annoyance, mental stress, mental anguish, and emotional distress; and (x) the present and substantial risk of imminent harm from further exposure of PII, which remains in Nationwide's possession and is subject to further unauthorized disclosures so long as Nationwide fails to undertake appropriate and adequate measures to protect the PII.

Amend. Compl. ¶ 6, ECF No. 7. Accordingly, the commonality requirement is satisfied.

## C. Typicality

A class representative's "claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082). The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, the typicality element is satisfied because the Class claims are based on the same legal theories and the same alleged conduct.

## D.    Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. 157–58).  To determine the adequacy of representation requirement, a court must consider two elements: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representative[] will vigorously prosecute the interests of the class through qualified counsel.'" *Pelzer v. Vassalle*, 655 F. App'x 352, 364 (6th Cir. 2016) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083).

Here, the Class Representatives and Class Members share common interests.  No conflict exists between the Class Representatives and the Class Members they seek to represent.  Class Counsel also represented at the Fairness Hearing that they have extensive experience in data breach class action litigation.  Thus, adequacy is met.

## E.    Rule 23(b) Requirements

Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that common questions of fact or law predominate over any individual questions and that a class action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

### 1.  Predominance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011) (citing *Beattie*, 511 F.3d at 564).

Predominance is satisfied here.  There is one set of operative facts which would render Defendant potentially liable to each potential class member, as evident in the definition of the class.  Each class member alleges that their PII was compromised in the same data breach incident.  Consequently, the alleged injuries to Class Members are of the same nature.  The Court therefore finds common questions predominate over individual issues.

### 2.  Superiority

Finally, before certifying a class under Rule 23(b)(3), the Court must find that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  To make this decision, the Court considers:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*

Here, class treatment is superior to other available methods.  The Class Members have little interest in individually controlling separate actions as the amount of individual damages is likely to be small and far outweighed by the cost of litigation.  "[S]mall awards weigh in favor of class suits."  *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011) (citing cases).  The Court is unaware of any litigation concerning this controversy that is currently pending, by or against the Class Members.[1]  It is desirable to concentrate the litigation in this forum as the Parties and, to a lesser extent, the Court have already expended time and resources on this case.  Last, the difficulties in managing a class action do not outweigh the benefits of certifying a class in this case.  Accordingly, a class action is clearly the superior method of adjudicating this case.

For these reasons, the Class is **CERTIFIED** for purposes of the Settlement, and the Court **APPOINTS** Terence R. Coates and Justin C. Walker of Markovits, Stock & DeMarco, LLC, and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel.

---

[1] Plaintiff Joy Dyer filed a separate case in another division of the Southern District of Ohio.  *Joy Dyer v. Nationwide Ret. Solutions, Inc.*, Case No. 1:22-cv-612.  That case was later dismissed by Plaintiff Joy Dyer, and Plaintiff Sheryl Jackson added Plaintiff Joy Dyer as a named plaintiff in this case.  *See generally* Amend. Compl., ECF No. 7.

## III.    APPROVAL OF THE PROPOSED CLASS SETTLEMENT

When deciding whether to approve a proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted).  The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992) (citation omitted).   For the reasons below, the Court concludes that the Settlement is fair, adequate, and reasonable.

### A.    The Risk of Fraud or Collusion

First, the Court finds that there is no evidence—or even a suggestion—that the Settlement was the product of fraud or collusion.  *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary." (citation omitted)).  Rather, the Settlement is the result of arm's-length, well-researched,

and protracted negotiations. The Court concludes that this factor favors approval

of the Settlement.

**B.      Complexity, Expense, and Likely Duration of Litigation**

Generally, "'[m]ost class actions are inherently complex and settlement

avoids the costs, delays, and multitude of other problems associated with them.'"

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)

(quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164,

174 (S.D. N.Y. 2000)).

Here, the difficulty Plaintiffs would encounter in proving their claims, the

substantial litigation expenses, and the possibility of further delay in recovery due

to the appellate process weigh in favor of approving the Settlement. As Class

Counsel explained at the hearing, the technical issues involved in data breach

cases are complex. Continued litigation would have required substantial time,

effort, and expense, both to retain qualified experts and to conduct record review

and depositions. Settling the case now saves time and money for the Parties

and the Court.

Accordingly, this factor weighs in favor of approving the Settlement. It

secures a substantial benefit for the Class Members, undiminished by further

expenses and without the delay, cost, and uncertainty of protracted litigation.

**C.      Amount of Discovery**

To confirm that Plaintiffs "have had access to sufficient information to

evaluate their case and to assess the adequacy of the proposed Settlement," the

Court must consider the amount of discovery engaged in by the Parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (citations omitted). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement," courts "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (citation omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (citing cases).

In this case, the Parties engaged in significant informal discovery and engaged in extensive settlement negotiations, such that both sides have been able to analyze the strengths and weaknesses of their positions and determine that the Settlement is fair and reasonable under the circumstances. In addition, Class Counsel represented at the Fairness Hearing that the Class Representatives have been intimately involved in this litigation and are supportive of settlement. The Court finds that both sides made well-informed decisions to enter into the Settlement. This factor weighs in favor of approving the proposed Settlement.

**D.     The Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a

Settlement is the probability of success on the merits.  The likelihood of success,

in turn, provides a gauge from which the benefits of the settlement must be

measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co.*

*Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, Plaintiffs allege that Defendant was negligent in safeguarding their

PII and that this negligence led to the data breach.  Discovery revealed

weaknesses in Plaintiffs case, namely, that none of the Plaintiffs' PII was

exfiltrated.  Accordingly, based on the uncertainties inherent in their claims,

Plaintiffs' likelihood of success on the merits remains uncertain.  Given the nature

of the proposed settlement, the Court finds the benefits of settlement are

proportionate to Plaintiffs' likelihood of success on the merits.  This factor

therefore weighs in favor of approving the Proposed Settlement.

**E.     Opinions of Class Counsel and Class Representatives**

The recommendation of Class Counsel, skilled in class actions and

corporate matters, that the Court should approve the Settlement is entitled to

deference.  *See e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)

("The court should defer to the judgment of experienced counsel who has

competently evaluated the strength of his proofs . . . . [T]he deference afforded

counsel should correspond to the amount of discovery completed and the

character of the evidence uncovered."); *see also Kritzer v. Safelite Solutions,*

*LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class."). The Court also considers the approval of the Class Representatives, particularly where they are significantly involved in the discovery and settlement negotiation process. *See e.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, Case No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016).

Here, Class Counsel has represented that they have significant experience in class and complex litigation, including over 100 data breach class actions. Thus, their recommendation that the Court approve the Settlement is entitled to deference. Further, as represented at the Fairness Hearing, the Class Representatives were extensively involved in reviewing discovery as well as the negotiations process and have approved the Settlement. Accordingly, this factor supports approving the proposed Settlement.

**F.    The Reaction of Absent Class Members**

The Court must also consider the reaction of the Class Members. *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376. Here, as described above, from a pool of 2,189 Class Members, only five did not receive notice, four of whom are believed to be deceased. None of the Class Members objected or

opted out. *See* Joint Notice regarding Settlement Opt-Outs and Objections, ECF No. 28. The positive response from the Class Members weighs in favor of approving the Settlement.

## G. The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citation omitted). In this case, the Settlement confers immediate benefits on the Class Members, avoids the risks and expenses of further litigation, and conserves judicial resources. The Court therefore finds that this factor favors approving the Settlement.

In sum, after considering the relevant factors, the Court concludes that the Settlement provides a substantial benefit to the Parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## IV. ATTORNEY'S FEES AND SERVICE AWARDS

### A. Attorney's Fees

Class Counsel seeks an award of $120,000.00 in attorney's fees, inclusive of any litigation expenses, which is approximately 16% when measured as a percentage of the benefit to the Class. *See* Decl. of Terence R. Coates, ECF No. 27-1. Neither Defendant nor any Class Member opposed this request for fees.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees

and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio Dec. 31, 2007). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach. *Id.* Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d. at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court applies the percentage of the fund method. *See, e.g., Gascho v. Glob. Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which calculation method is being applied (citation omitted)). Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

Case No. 2:22-cv-3499                                              Page 15 of 25

*Moulton*, 581 F.3d at 352 (internal quotation marks and citations omitted).

Under the circumstances of this specific case, particularly where neither Defendant nor any Class Member opposes the fee request and the Class has received a "substantial benefit," the Court concludes that all of these factors weigh in favor of approving an award of attorney's fees.

As to the first factor, the Court has already described the benefit conferred to the Class Members through Settlement. The value of the credit monitoring to the Class is $240.00 for two years of monitoring per Class Member, totalling $525,360.00. The value of the one-year of third-party ethical hacking cybersecurity program that Defendant has agreed to enroll in and pay for, is $225,000.00. The total value of the benefit rendered to the Class is $750,360.00. This factor therefore weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the hourly rate, favors the proposed fee award. This Court ordered Plaintiffs' Counsel to submit their time records, Order, ECF No. 31, which they did, Not., ECF No. 33. Their updated lodestar includes hours spent in obtaining final approval, for total hours spent of 208.7. *Id.* at 1. The updated lodestar is $138,584.24. As represented in the motion for approval of attorney's fees and notice, the lodestar is greater than the requested fee, which is $120,000.00 minus expenses. Specifically, Terence R. Coates and Justin C. Walker, and their firm, spent a total of 156.5 hours and represented their lodestar to be

$102,982.00.  Class Counsel's Lodestar & Expense Chart 2, ECF No. 33-2

(billing between $375.00 to $795.00 for attorneys and $190.00 for paralegals).  J.

Gerard Stranch, IV, and his firm had a total lodestar of $23,722.24. *Id.* at 3 (total

hours of 29.20; billing between $708.50 and $1,308.00 for attorneys, and

$343.40 for paralegals).  Finally, attorney Amina Thomas spent 14.5 hours,

billing at a rate of $525.00 for a total lodestar of $7,612.50.  *Id.* at 4.  Some of

these hourly rates are higher than what the Court typically sees.  However,

because the requested fee is lower than the represented lodestar, the actual

hourly rates are closer to those the Court usually sees.  Thus, this factor favors

granting the requested fee.

Third, Class Counsel represents that they took on this case pursuant to a

contingency fee agreement.  Mot. 8–9, ECF No. 27.  In doing so, Class Counsel

assumed a real risk in taking on this case, preparing to invest time, effort, and

money with no guarantee of recovery.  This factor favors approving the

requested fee award.  *See, e.g.*, *In re Sulzer Hip Prosthesis and Knee Prosthesis*

*Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class

action, most individual claimants would lack the resources to litigate a case of

this magnitude.").

The Court next considers whether the fourth factor, society's stake in

rewarding attorneys who produce such benefits, militates in favor of an award of

the requested attorney's fees.  Class actions such as this have a "value to

society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation— and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287 (citing cases). Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their case.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also support granting the requested award. This is a complex case with nuanced issues and significant litigation.

Class Counsel have extensive experience in class action litigation and specifically with data privacy class actions. *See* Coates Decl. ¶ 3, ECF No. 24-2. As discussed above, the hours expended and time records submitted by Class Counsel underscore their competency and efficient handling of this matter, favoring approval.

For these reasons, the Court **APPROVES** the fee award of $120,000.00 inclusive of expenses and costs, to Class Counsel.

**B.    Class Representative Awards**

Service awards are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf

of the class." *Hadix*, 322 F.3d at 897. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, the Settlement Agreement proposes to award the Class Representatives service awards of $5,000.00 each. Settlement Agr. 17, ECF No. 24-1. As represented at the hearing, the Class Representatives significantly assisted in the prosecuting and settling of the litigation, including reviewing court filings and the settlement agreement, and participating in settlement negotiations. *See* Decl. of Terence R. Coates ¶ 3, ECF No. 27-1. In light of this service, the Court **APPROVES** the service awards of $5,000.00 to each Class Representative.

## V. CONCLUSION

For these reasons, the Court **GRANTS** final approval of the Settlement and enters final judgment as follows:

1.    The Court incorporates by reference the Settlement Agreement, including its exhibits (the "Settlement Agreement"), and the definition of words and terms contained therein. The Court also incorporates by reference the terms of this Court's Preliminary Approval Order.

2.    This Court has subject-matter jurisdiction over the Litigation and

personal jurisdiction over the Parties, including all members of the following Class from this Court's Preliminary Approval Order:

> **All individuals whose Private Information was compromised in the September 2022 data breach announced by Nationwide Retirement Solutions, Inc.**

3.     The Court finds that the Settlement Agreement is the product of arm's-length settlement negotiations between Plaintiffs and Class Counsel, and Nationwide and its counsel.

4.     The Court finds and concludes that Notice was disseminated to members of the Class in accordance with the terms set forth in the Settlement Agreement and that the Notice and its dissemination complied with this Court's Preliminary Approval Order.

5.     The Court further finds and concludes that the Notice set forth in the Settlement Agreement fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Class Members who could be identified through reasonable effort, and supports the Court's exercise of jurisdiction over the Class as contemplated in the Settlement Agreement and this Order.

6.     This Court finds and concludes that the notice provided by Nationwide to the appropriate state and federal officials pursuant to 28 U.S.C. § 1715 fully satisfied the requirements of that statute.

7.     The Court hereby finally approves the Settlement Agreement and the Settlement contemplated thereby, and finds that the terms constitute, in all respects, a fair, reasonable, and adequate settlement as to all Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure and directs its consummation pursuant to its terms and conditions. Each Class Member who has not submitted a valid request to opt out of the Settlement is hereby bound by the Settlement Agreement.

8.     The Court hereby finds that the Class Representatives and Class Counsel have adequately represented the Class Members.

9.     The Court finds that Class Representatives Sheryl Jackson and Joy Dryer have served as adequate representatives of the Class and hereby approves Class Representative Service Awards in the amount of $5,000.00 each.

10.     The Court finds that Class Counsel, Terence R. Coates and Justin C. Walker of Markovits, Stock & DeMarco, LLC, and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC, have adequately represented the Class and therefore approves an award of $120,000.00 for attorney's fees inclusive of any litigation expenses.

11.     This Court hereby dismisses, with prejudice and without leave to amend and without costs to any party, the Litigation, and all claims against Nationwide in the Litigation by Plaintiffs and the Class Members.

12.     Plaintiffs and each and every one of the Class Members, as well as

their respective assigns, heirs, executors, administrators, successors, representatives, agents, partners, and attorneys fully, finally and forever release, relinquish and discharge all Released Claims as against all Released Persons based on, arising out of, or in any way related to the Data Incident. The Released Claims specifically extend to claims that Plaintiffs and Class Members do not know or suspect to exist in their favor at the time that the Settlement Agreement and the release contained therein becomes effective. This release shall be interpreted to the fullest extent of res judicata principles. In addition, any rights of the Plaintiffs and each and every one of the Class Members to the protections afforded under Section 1542 of the California Civil Code and/or any other similar, comparable, or equivalent laws, are terminated.

13.     Plaintiffs and each and every Class Member, as well as their respective assigns, heirs, executors, administrators, successors, representatives, agents, partners, and attorneys are hereby permanently barred and enjoined, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the Settlement as provided herein) in which any of the Released Claims is asserted. This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement, this Order, and this Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to

protect its judgments.

14.     The Settlement Agreement (including, without limitation, its exhibits), and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation or principle of common law or equity, of any liability or wrongdoing, by Nationwide, or of the truth of any of the claims asserted by Plaintiffs in the Litigation.  Further, the Settlement Agreement and any and all negotiations, documents, and discussions associated with it, will not be deemed or construed to be an admission by Nationwide that the Litigation is properly brought on a class or representative basis, or that classes may be certified for any purpose.  To this end, the settlement of the Litigation, the negotiation and execution of the Settlement Agreement, and all acts performed or documents executed pursuant to or related to the Settlement Agreement: (i) are not and will not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Nationwide or of the truth of any of the allegations in the Litigation; (ii) are not and will not be deemed to be, and may not be used as an admission or evidence of any fault or omission on the part of Nationwide in any civil, criminal, or administrative proceeding in any court, arbitration forum, administrative agency, or other tribunal; and, (iii) are not and will not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification.  Further, evidence relating to the Settlement Agreement shall not be

discoverable or used, directly or indirectly, in any way, whether in the Litigation or in any other action or proceeding, except for purposes of enforcing the terms and conditions of the Settlement Agreement, the Preliminary Approval Order, and/or this Order.

15.     If for any reason the Settlement Agreement terminates, then certification of the Class shall be deemed vacated.  In such an event, the certification of the Class for settlement purposes or any briefing or materials submitted seeking certification of the Class shall not be considered in connection with any subsequent class certification issues, and the Parties shall return to the status quo ante in the Litigation, without prejudice to the right of any of the Parties to assert any right or position that could have been asserted if the Settlement Agreement had never been reached or proposed to the Court.

16.     In the event that any provision of the Settlement Agreement or this Order is asserted by Nationwide as a defense in whole or in part (including, without limitation, as a basis for a stay) in any other suit, action, or proceeding brought by a Class Member or any person actually or purportedly acting on behalf of any Class Member(s), Nationwide and Class Counsel may seek an immediate stay of that suit, action or other proceeding, which the Class Member shall not oppose, until the court or tribunal in which the claim is pending has determined any issues related to such defense or assertion.  This provision is necessary to protect the Settlement Agreement, this Order, and this Court's authority to effectuate the

Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgment.

17.     Finding that there is no just reason for delay, the Clerk of the Court is directed to enter this Order on the docket and enter final judgment pursuant to Rule 54(b) forthwith.

18.     The Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement.

The Clerk shall close the case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**